UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

LESTER E. COX MEDICAL CENTERS,
a Missouri Nonprofit Corporation, doing
business as CoxHealth
1423 N. Jefferson
Springfield, MO 65802,

    Plaintiff,

v.

MICHAEL O. LEAVITT,
Secretary of the United States Department of
Health and Human Services,
200 Independence Avenue, S.W.
Washington, D.C. 20201,

    Defendant.

## COMPLAINT FOR JUDICIAL REVIEW UNDER THE MEDICARE ACT, 42 U.S.C. § 1395oo(f)

Plaintiff Lester E. Cox Medical Centers, a Missouri nonprofit corporation, doing business as CoxHealth, sometimes referred to as Cox Medical Center (the "Provider" or "Hospital"), alleges as follows:

### INTRODUCTION

1.     This is an appeal from a decision by the Provider Reimbursement Review Board ("PRRB" or "Board"), an administrative tribunal that adjudicates disputes between providers of Medicare services and the federal government, denying jurisdiction over an appeal by the Hospital of the final determination of Medicare reimbursement owed to it for its fiscal years ending September 30, 1997 and September 30, 1998. The Hospital seeks reimbursement to which it is entitled for certain "crossover bad debts," explained below. The PRRB held that it did not have jurisdiction because the Hospital had allegedly not claimed reimbursement for these

specific items when it filed its cost reports for the two fiscal years. The Hospital contends that the PRRB's conclusion that it did not have jurisdiction was erroneous because (1) the Hospital did, in fact, claim the crossover bad debts on its cost reports; (2) under 42 U.S.C § 1395oo(d), the PRRB has the power to decide issues with respect to all matters covered by a cost report, regardless of whether such matters pertain to a cost for which reimbursement was originally claimed; (3) for purposes of appealing, 42 U.S.C. § 1395oo(a) requires only dissatisfaction with the final determination of reimbursement, not dissatisfaction on an issue-by-issue basis; (4) the PRRB's decision was arbitrary and capricious because it is inconsistent with prior decisions on the same issue; and (5) the decision denying jurisdiction is contrary to Congressional intent. Unless the Court intervenes, this dismissal will operate to deprive the Hospital completely of the right to be heard on reimbursement issues which should be resolved favorably to the Hospital, as there is no substantive dispute as to whether the Hospital is entitled to reimbursement for these crossover bad debts. Thus, the Hospital will suffer a substantial forfeiture of sums owed for crossover bad debts for the 1997 and 1998 fiscal years.

## JURISDICTION AND VENUE

2.  This action arises under Title XVIII of the Social Security Act, as amended, 42 U.S.C. §§ 1395-1395ggg ("Medicare Act").

3.  Jurisdiction exists under 42 U.S.C. § 1395oo(f).

4.  Venue lies in this judicial district pursuant to 42 U.S.C. § 1395oo(f).

## PARTIES

5.  Plaintiff Hospital is a Medicare-certified, acute care hospital located in Springfield, Missouri. Plaintiff was Medicare-certified during the fiscal periods at issue (fiscal years ending ("FYEs") 9/30/97 and 9/30/98).

2

6.    Defendant, Michael O. Leavitt, the Secretary of the United States Department of Health and Human Services, is the federal official responsible for administering the Medicare program.

## THE MEDICARE PROGRAM

7.    The Medicare Act establishes a system of health insurance for the aged and disabled. 42 U.S.C. §§ 1395-1395ggg. The Medicare program is federally funded and is administered by the Secretary through the Centers for Medicare & Medicaid Services ("CMS"), formerly known as the Health Care Financing Administration ("HCFA"). 42 U.S.C. § 1395kk; 42 Fed. Reg. 13,202 (Mar. 9, 1977).

8.    Payments to Medicare providers are carried out by fiscal intermediaries pursuant to contracts with the Secretary. Fiscal intermediaries make interim payments to providers, subject to subsequent adjustments, overpayments and underpayments. 42 U.S.C. § 1395h.

9.    At the close of its fiscal year, each Medicare provider must submit a "cost report" showing both the costs incurred by it during the fiscal year and the appropriate portion of those costs to be allocated to the Medicare program. 42 C.F.R. §§ 413.20 and 413.24.

10.    The intermediary is then required to analyze and audit the cost report and to inform the provider of the intermediary's final determination of the provider's Medicare reimbursement for that cost reporting period, which is also known as the intermediary's "notice of amount of program reimbursement" or "NPR." 42 C.F.R. § 405.1803.

## MEDICARE BAD DEBTS

11.    Medicare beneficiaries are responsible for certain deductibles and coinsurance for services provided to them by hospitals. 42 U.S.C. §§ 1395e and 13951.

12. Some Medicare beneficiaries also qualify for and are enrolled in their state's Medicaid program, a program funded with both federal and state funds that reimburses health care providers for care provided to qualified low-income persons. 42 U.S.C. §§ 1396, *et seq*. Individuals who are enrolled in both Medicare and Medicaid are often referred to as "dual-eligibles" or as "crossover" beneficiaries. Such individuals are not responsible for paying their deductibles or coinsurance, but their state's Medicaid program is responsible under certain circumstances for paying part or all of the deductible and/or copayment. 42 U.S.C. §1396a(n).

13. Assuming hospitals have made reasonable efforts to collect the deductibles and copayments from their Medicare patients, and have met certain other criteria, the unpaid deductibles and coinsurance will be reimbursed by the Medicare program. The uncollectible deductibles and coinsurance is referred to as Medicare "bad debt." 42 C.F.R. § 413.89.

14. Medicare bad debt may also result from the deductibles and coinsurance, or portions therof, incurred by dual-eligibles, for which the individual's State is not responsible. This is commonly referred to as "crossover bad debt."

15. In the year in which such amounts are deemed to be uncollectible, a hospital may claim reimbursement for both regular and crossover bad debt by including an amount for bad debt on its cost report.

## THE PRRB APPEAL PROCESS

16. If a provider is dissatisfied with its fiscal intermediary's final determination of Medicare program reimbursement for a particular cost reporting period, and if the provider meets the requirements set forth in 42 U.S.C. § 1395oo(a), the provider may appeal the intermediary's determination (or NPR) to the PRRB. 42 U.S.C. § 1395oo.

17. The PRRB is a five member administrative tribunal that sits in Baltimore, Maryland and decides disputes between Medicare providers and their fiscal intermediaries over the amount of reimbursement owed by the Medicare program for services rendered to Medicare patients. *See generally* 42 U.S.C. § 1395oo.

18. Prior to the commencement of the hearing proceedings before the PRRB, a provider may identify in writing additional aspects of the intermediary's determination with which it is dissatisfied and furnish any documentary evidence in support thereof. 42 C.F.R. § 405.1841(a).

19. The PRRB has the "power to affirm, modify, or reverse a final determination of the fiscal intermediary with respect to a cost report and to make any other revisions on matters covered by such cost report . . . even though such matters were not considered by the intermediary in making such final determination." 42 U.S.C. § 1395oo(d); 42 C.F.R. § 405.1869.

20. Following the Board's issuance of a decision, the CMS Administrator may review the Board's decision and adopt or reverse the decision in whole or in part. The decision of the PRRB (or of the CMS Administrator if the Board's decision is reviewed by the Administrator) becomes the final determination of the Secretary, which is subject to judicial review pursuant to 42 U.S.C. § 1395oo(f) and 42 C.F.R. § 405.1875. According to these provisions, a provider may bring an action to appeal the Secretary's final decision (whether by the PRRB or the CMS Administrator) in the United States District Court for the judicial district in which the provider is located, or alternatively in the United States District Court for the District of Columbia.

## FACTUAL AND PROCEDURAL HISTORY

21. On September 24, 1999, the Hospital's fiscal intermediary, Mutual of Omaha, issued a NPR for the fiscal year ended September 30, 1997 ("FYE 1997").

22. On January 14, 2000, the Hospital timely submitted to the PRRB an appeal of its NPR for FYE 1997.

23. On August 31, 2000, the Hospital's fiscal intermediary, Mutual of Omaha, issued a NPR for the fiscal year ended September 30, 1998 ("FYE 1998").

24. On February 15, 2001, the Hospital timely submitted to the PRRB an appeal of its NPR for FYE 1998.

25. While its appeals were pending, the Hospital determined that it should have been entitled to reimbursement for certain crossover bad debts in addition to the amounts it originally included on the line for bad debts on the cost report.

26. By letter dated November 15, 2005, the Hospital added the issue of additional Medicare bad debts to the appeals for FYEs 1997 and 1998. The Hospital also provided documentation to its intermediary supporting the additional crossover bad debt that it claimed.

27. On May 10, 2007, the PRRB dismissed the crossover bad debts issue from the appeal, on the grounds that it lacked jurisdiction over the crossover bad debts issue because the Hospital allegedly did not claim the additional crossover bad debts originally when it filed its cost report. A copy of the PRRB's Jurisdictional Decision is attached hereto as Exhibit A.

28. On May 23, 2007, the Hospital filed a Motion for Reconsideration of the Jurisdictional Decision by the PRRB.

29. The Hospital has not yet received a ruling from the PRRB on its Motion for Reconsideration of the Jurisdictional Decision.

6

## **INVALIDITY OF THE PRRB'S DETERMINATION**

30. The dismissal determination of the PRRB is reviewable by this Court pursuant to the provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 706. 42 U.S.C. § 1395oo. Furthermore, the PRRB's dismissal of the Hospital's FYEs 1997 and 1998 appeals is inconsistent with and unauthorized by the governing Medicare statute, regulations and manual provisions, is arbitrary and capricious, is inconsistent with the prior history of practice in PRRB appeals, and is directly contrary to previous decisions, for the following reasons, among others:

    a. The PRRB's decision that it lacked jurisdiction over the crossover bad debts because the matter was not covered by the cost report is inconsistent with the facts and with governing law, including 42 U.S.C. § 1395oo(d) and 42 C.F.R. § 405.1869. The Hospital did claim both regular and crossover bad debts on Worksheet E, Part A, line 21 and Worksheet E, Part B, line 27, on its cost reports for the years ending 9/30/1997 and 9/30/1998. Moreover, crossover bad debts were included in contractual allowances on Worksheet G-3 of the cost reports. Thus, the PRRB's finding that crossover bad debts, including the specific crossover bad debts in questions, were not included on the original cost reports was erroneous.

    b. Even if the Hospital had not claimed the crossover bad debt on its cost reports, the PRRB has the power to decide issues with respect to all matters covered by a cost report regardless of whether such matters pertain to a cost for which reimbursement was claimed, pursuant to 42 U.S.C. § 1395oo(d). Section 1395oo(d) makes clear that the PRRB's power extends to all matters covered by a cost report over which it has jurisdiction under § 1395oo(a), including items that were not considered by the intermediary in making its final determination. Similarly, 42 C.F.R. § 405.1869 states that the scope of the Board's decision-making authority includes matters covered by cost reports even though such matters were not considered in the

7


intermediary's determination. Matters covered by cost reports include "a cost or expense that was incurred within the period for which the cost report was filed, even if such cost or expense was not expressly claimed." *Bethesda Hosp. Ass'n v. Bowen,* 485 U.S. 399, 406 (1988). Thus, the crossover bad debt sought herein was a matter covered by the cost report and thus reviewable by the PRRB, even if it had not been claimed on Worksheet G-3.

    c.    By filing a timely appeal, the Hospital satisfied the "dissatisfaction" requirement, i.e., that it be dissatisfied with its total amount of program reimbursement. 42 U.S.C. § 1395oo(a) requires dissatisfaction with the final determination of reimbursement for a fiscal period and not dissatisfaction on an issue-by-issue basis. Thus, a provider's failure to claim a particular cost does not affect a provider's ability to have the PRRB consider that cost (or, as in this case, some additional amounts of a particular claimed cost), so long as the provider filed a timely appeal demonstrating dissatisfaction with its total reimbursement for the fiscal period.

    d.    The PRRB's decision that it does not have jurisdiction to hear claims not first raised before the intermediary is inconsistent with Board precedent. *See Santa Marta Hosp. v. Blue Cross Blue Shield Ass'n/Blue Cross of Cal.,* PRRB Hearing Decision No. 97-D16 (Dec. 5, 1996) (Board found it had jurisdiction over additional amount of bad debts that had not been included in the initial cost report); *Mayo Reg'l Hosp. v. Blue Cross Blue Shield Ass'n/Assoc. Hosp. Services of Me.,* PRRB Hearing Decision No. 2002-D15 (Mar. 27, 2002) (Board held it had jurisdiction because contractual allowances, including all crossover bad debts had been effectively claimed on Medicare cost report); *Loma Linda Univ. Med. Ctr. v. Blue Cross Blue Shield Ass'n of Cal.,* PRRB Hearing Decision No. 2001-D43 (Aug. 30, 2001) (*rev'd by* HCFA Adm. Decision, November 1, 2001) (Board held it had jurisdiction based in part that the interest

expense incurred was initially included on Worksheet A but later removed through a Worksheet A-8 adjustment; Board also noted that it has authority to review other matters covered by the cost report that may not have been considered by the intermediary). It is arbitrary and capricious for the PRRB to rule that it did not have jurisdiction over the crossover bad debts issue here because it was not part of an intermediary determination, where the PRRB has repeatedly accepted jurisdiction and decided issues under similar circumstances.

   e. The PRRB's decision that it lacks jurisdiction is inconsistent with Congressional intent. Congress specifically empowered the PRRB to review the intermediary's final determination *and* "to make any other revisions on matters covered by such cost report . . . even though such matters were not considered by the intermediary in making such final determination." 42 U.S.C. § 1395oo(a).

   WHEREFORE, the Hospital prays for judgment as follows:

   1. For an order requiring the Secretary to reinstate the Hospital's FYEs 1997 and 1998 appeal;

   2. For an Order declaring that the PRRB has the jurisdiction and authority to determine the crossover bad debts issue;

   3. For an Order directing the Secretary and his agents to compute the determination of the Hospital's reimbursement for FYEs 1997 & 1998 by including the Hospital's allowable crossover bad debt claims and paying the Hospital promptly the additional reimbursement to which it is thereby entitled;

   4. For interest pursuant to 42 U.S.C. § 1395oo(f)(2);

   5. For costs of suit; and

6.    For such other and further relief as the Court deems appropriate.

Dated: July 6, 2007                    Respectfully Submitted,

                                                             /s/ John R. Jacob

John R. Jacob, Esq.
D.C. Bar No. 444412
AKIN GUMP STRAUSS HAUER & FELD LLP
Robert S. Strauss Building
1333 New Hampshire Ave. N.W.
Washington, D.C. 20036
Telephone: (202) 887-4582
Fax: (202) 955-7648
Email: jjacob@akingump.com

**OF COUNSEL:**

Byron J. Gross, Esq.
HOOPER, LUNDY AND BOOKMAN, INC.
1875 Century Park East, Suite 1600
Los Angeles, California 90067
Tel: (310) 551-8151
Fax: (310) 551-8181

Attorneys for Plaintiff

# EXHIBIT A



**DEPARTMENT OF HEALTH AND HUMAN SERVICES
PROVIDER REIMBURSEMENT REVIEW BOARD**
2520 Lord Baltimore Drive, Suite L
Baltimore MD 21244-2670
Phone: 410-786-2671      FAX: 410-786-5298

Suzanne Cochran, Esq., Chairperson
Gary B. Blodgett, D.D.S.
Elaine Crews Powell, CPA
Anjali Mulchandani-West
Yvette C. Hayes

Refer to:
00-1137, 01-1272
CERTIFIED MAIL

J.C. Ravindran, President
Quality Reimbursement Advisors
150 North Santa Anita Avenue
Suite 570A
Arcadia, CA 91006

Terry Gouger
Mutual of Omaha Insurance Company
Medicare Division
P.O. Box 1604
Omaha, NE 68101

MAY 10 2007

RE: Lester E. Cox
    Provider No. 26-0040
    PRRB Case Nos. 00-1137     FYE 09/30/97
                   01-1272     FYE 09/30/98

Dear Messrs. Ravindran and Gouger:

The Provider Reimbursement Review Board (Board) has reviewed the parties jurisdictional briefs regarding bad debts filed in the above-referenced cases. The jurisdictional decision of the Board is set forth below.

## Background

Case number 00-1137 was filed on January 14, 2000, from a Notice of Program Reimbursement (NPR) dated September 24, 1999. The bad debts issue was added to the appeal through correspondence dated November 17, 2005. Case number 01-1272 was filed on February 15, 2001, from an NPR dated August 13, 2001. The bad debts issue was added to the appeal through correspondence dated November 15, 2005. In both cases, the Provider appealed a number of other issues and the amount in dispute exceeds the $10,000 required for Board jurisdiction under 42 U.S.C. § 1395oo(a) and 42 C.F.R. §§ 405.1835-405.1841.

## Contentions of the Parties

### Intermediary's Position

The Intermediary explains that the Provider claimed bad debts on its cost reports and bad debts were adjusted to agree with its audit findings. In April of 2006, the Provider submitted a listing of additional cross-over bad debts that that not been claimed on the as-filed cost reports and it now wished to include them on the audited cost report.

Provider Reimbursement Review Board
Page 2 J.C. Ravindran/Terry Gouger

CNs 00-1137/01-1272

The Intermediary asserts that the unclaimed cross-over bad debts were not part of the final determination of reimbursement as required for Board jurisdiction under 42 U.S.C. § 1395oo(a). The Intermediary cited Little Company of Mary v. Shalala, 165 F.3d 1162 (7th Cir. 1999) (Little Company of Mary II) to support its position. In Little Company of Mary II, the provider incurred a loss on refunding of debt and a smaller loss on the sale of land. The provider deducted the entire loss on the debt refunding from its investment income, reducing its investment income to zero and did not mention the land loss. The Intermediary disallowed the claim because the Provider Reimbursement Manual (CMS Pub. 15-1) requires that the loss be amortized over the life of the debt. Then the Provider changed its position and argued that it should be permitted to deduct the loss on the sale of the land from its investment income which it had not claimed. The Board denied the request find that the provider was not permitted to bypass the intermediary's review. The Court agreed with the Board and found that the provider must give the intermediary the first shot at reviewing the costs because it was within the intermediary's competence. The Court concluded that this was not a self-disallowed cost under the Supreme Court's decision in Bethesda Hospital Association v. Bowen, 108 S.Ct. 1255 (1988) (Bethesda) because there was nothing to preclude the Provider from claiming the loss on the land on its cost report. The Intermediary asserts that since it has not made a determination with respect to the additional cross-over bad debts because there is no claim for this on the cost report, there is no right to a Board hearing.

Provider's Position

The Provider admits that it did not claim the additional cross-over bad debts that are the subject of this jurisdictional dispute. The Provider asserts that the Board had jurisdiction over the issue because it is dissatisfied with the final determination of reimbursement and the Board is permitted to make revisions on matters covered by the cost report. 42 U.S.C. § 1395oo(d). In addition, 42 C.F.R. § 405.1889 allows the Board to affirm, modify or reverse a determination of the intermediary with respect to a cost report and to make any other modifications on matters covered by the cost report even though not considered by the intermediary. In addition, the Provider claims that these cross-over bad debts were self-disallowed costs under Bethesda because the bad debts were incurred during the cost reporting period, although not expressly claimed.

The Provider argues that there is nothing in the statute that requires a provider to demonstrate dissatisfaction with an Intermediary determination concerning a specific item in order to raise it before the Board. Rather, a provider must be dissatisfied with its intermediary's final determination of its total reimbursement for the period covered by the cost report. The Provider also pointed to the decision in Maine General Medical Center v. Shalala, 205 F.3d 493 (1st Cir. 2000) for the proposition that it is within the Board's discretionary powers to hear an appeal of an unclaimed cost. In addition the Provider cites to St. Mary of Nazareth v. DHHS, 698 F.2d 1337 (7th Cir. 1983) (St. Mary) and Loma Linda Linda University v. Thompson, ED CV 02-25 RT (C.D. Cal. July 8, 2005) currently on appeal (9th Cir. 05-56341 and 05-56497) (Loma Linda) for the proposition that the Board has jurisdiction over unclaimed costs.

Provider Reimbursement Review Board
Page 3 J.C. Ravindran/Terry Gouger

CNs 00-1137/01-1272

### Decision of the Board

The majority of the Board concludes that it lacks jurisdiction over the cross-over bad debts issue because the Provider failed to claim the costs on its cost reports as required. Therefore, the Provider cannot claim dissatisfaction with an intermediary determination as required by 42 U.S.C. § 139500(a) and 42 C.F.R. § 405.1835-405.1841. The Board hereby dismisses the cross-over bad debts issue from the appeal.

For the Board to have jurisdiction over the bad debts issue it must be a matter covered by the cost report and a matter for which the intermediary has made a determination. 42 U.S.C. § 139500(a) (a provider may obtain a hearing before the Board where it "is dissatisfied with the final determination of the organization serving as its fiscal intermediary). Here, the unclaimed bad debts were not presented to the Intermediary for audit so there is no final determination with regard to the unclaimed costs.

Cross-over bad debts are not a self-disallowed cost under the Supreme Court's decision in Bethesda. There was no statute, regulation or manual provision that precluded the Provider from including cross-over bad debts on its cost report. In Bethesda, the Court noted that providers who fail to request reimbursement for all the costs to which they are entitled stand on different ground than providers who are precluded from claiming reimbursement. Bethesda at 1259. This Provider failed to claim reimbursement to which it was entitled and for which there was no barrier precluding such a claim.[1] In Battle Creek Health Systems v. Leavitt, (Battle Creek)[2] the Court concluded that the provider could not claim dissatisfaction regarding a cost it did not claim on its cost report. It cannot appeal the intermediary's final determination to the Board based on the intermediary's "non-consideration" of the omitted or mischaracterized cost because the Board has jurisdiction to hear appeals once the threshold requirement of dissatisfaction is met. Battle Creek, Slip opinion at 7.

The facts of this case are also analogous to those in Athens Community Hospital v. Sweiker, 743 F. 2d 1 (9th Cir. 1984) (Athens II). In Athens II the providers did not claim reimbursement for stock options or Federal income taxes. Four years later, the providers sought to amend their cost reports to include the costs. The providers argued that the Board should consider any cost somehow disclosed to the intermediary. The Court declined, holding that the Board does not have jurisdiction over costs not specifically claimed.[3] It was not plausible to contend that Congress created a scheme where providers can claim dissatisfaction and have recourse to an appeal procedure because the intermediary failed to read the provider's mind and anticipate all the things for which the

---

[1] See also, Little Company of Mary v. Shalala, 24 F.3d 984 (7th Cir. 1994) (a provider who failed to claim the full amount of reimbursement to which it is entitled "should not be permitted to later claim to be dissatisfied with the reimbursement received).
[2] W.D. Mich. October 20, 2006 (2006 U.S. Dist. Lexis 78124).
[3] Athens II at 5.

Provider Reimbursement Review Board
Page 4 J.C. Ravindran/Terry Gouger

CNs 00-1137/01-1272

provider would like reimbursement.[4] Further, the Court noted to allow unclaimed costs would have the effect of eliminating a tier of review and rendering almost meaningless the limits for filing cost reports. To allow the Board to hear such claims would also be inconsistent with the reopening regulations of 42 C.F.R. § 405.1885(d). For a matter to be at issue, the intermediary must have resolved the issue adversely to an actual claim by the Provider.[5] In both Battle Creek and Athens II, the Provider is seeking to have crossover bad debts incorporated into the cost report and bypass the reopening process and the first tier of review conducted by the Intermediary.

In the two cases cited by the Provider, St. Mary and Loma Linda, contrary to the Provider's statement, the costs were claimed on the cost report. In the St. Mary's case, the patient telephone costs that were the subject of the dispute were claimed on worksheet A-8 and were required to be disallowed because they were not covered services under 42 U.S.C. § 1395g. The Board denied jurisdiction over the issue because it was a coverage matter, not an unclaimed cost. The Board's decisions in Loma Linda[6] reflect that the interest cost was claimed on Worksheet A and was offset against interest income. After the final cost report computation was done interest expense was zero. The Provider discovered that part of the interest income was attributable to funded depreciation which would increase interest expense. Both interest income and interest expense were claimed on the cost report.

Review of this determination is available under the provisions of 42 U.S.C. § 1395oo(f) and 42 C.F.R. §§ 405.1876 and 405.1877.

<u>Board Members Participating</u>

 Suzanne Cochran, Esq.
 Gary B. Blodgett, DDS
 Elaine Crews Powell, CPA
 Anjali-Mulchandani-West (Dissenting)
 Yvette C. Hayes (Dissenting)

FOR THE BOARD:

Suzanne Cochran, Esq.
Chairman

Enclosures: 42 U.S.C. § 1395oo(f) and 42 C.F.R. §§ 405.1876 and 405.1877.

---

[4] Athens II at 6.
[5] Athens II at 7.
[6] Loma Linda University Medical Center v. Blue Cross of California, PRRB Dec. 98-D99, ( Medicare & Medicaid Guide (CCH)) ¶ 80,076 and PRRB Dec. 2002-D43 (Medicare & Medicaid Guide (CCH)) ¶ 80,733

JS-44
(Rev.1/05 DC)

# CIVIL COVER SHEET

### I (a) PLAINTIFFS
Lester E. Cox Medical Centers, dba CoxHealth

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** 88888
(EXCEPT IN U.S. PLAINTIFF CASES)

### DEFENDANTS
Michael O. Leavitt, Secretary, United States Department of Health and Human Services

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
John R. Jacob, Esq.
Akin Gump Strauss Hauer & Feld LLP
1333 New Hampshire Avenue, N.W.
Washington, D.C. 20036
202-887-4582

**ATTORNEYS (IF KNOWN)**

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
⦿ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A.** *Antitrust*
☐ 410 Antitrust

○ **B.** *Personal Injury/Malpractice*
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

⦿ **C.** *Administrative Agency Review*
☒ 151 Medicare Act
Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D.** *Temporary Restraining Order/Preliminary Injunction*

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E.** *General Civil (Other)*   OR   ○ **F.** *Pro Se General Civil*

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| ○ G. *Habeas Corpus/ 2255* | ○ H. *Employment Discrimination* | ○ I. *FOIA/PRIVACY ACT* | ○ J. *Student Loan* |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions (if Privacy Act)<br><br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |

| ○ K. *Labor/ERISA (non-employment)* | ○ L. *Other Civil Rights (non-employment)* | ○ M. *Contract* | ○ N. *Three-Judge Court* |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |

**V. ORIGIN**
- ● 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Action under 42 USC Sec. 1395 et seq. to review a final administrative action of the Secretary of HHS re the disallowance of Medicare bad debts.

**VII. REQUESTED IN COMPLAINT**  CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in complaint  JURY DEMAND:  YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**  (See instruction)  YES ☐  NO ☒  If yes, please complete related case form.

DATE 7/6/07  SIGNATURE OF ATTORNEY OF RECORD *[signature]*

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.  COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III. CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV. CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI. CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.